USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 11/5/2021

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

MARCOS ANTONIO RODRIGUEZ, JR.,

                Plaintiff,

-against-

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

-----------------------------------------------------------------X

**OPINION AND ORDER**

**20-CV-9040 (KHP)**

**KATHARINE H. PARKER, UNITED STATED MAGISTRATE JUDGE**

In this appeal brought pursuant to the Social Security Act, 42 U.S.C. § 405 *et seq.* (the "Act"), plaintiff Marcos Antonio Rodriguez, Jr. (the "Plaintiff" or the "Claimant"), challenges the final determination by the Commissioner of the Social Security Administration (the "Defendant" or the "Commissioner") that Rodriguez was ineligible to receive Supplemental Security Income Benefits ("SSIB").  Presently before the Court is the Commissioner's Motion for Judgment on the Pleadings pursuant to Fed. R. Civ. P. 12(c).  Although provided with an extension of time, Plaintiff did not file an opposition. (ECF No. 22.)  For the reasons that follow, the Commissioner's motion is denied and this case is remanded.

    1.    **BACKGROUND**

Plaintiff was born on December 26, 1982 and obtained his GED.  (A.R. 52.)  He testified about personal difficulties he had including, being homeless for two years and being in prison from 2009 to 2013 for a marijuana-related conviction. (A.R. 52-53, 531.)  He also appears to have had some trauma during his childhood from seeing the dead body of a neighbor who was killed.

(A.R. 531.)  After being released from prison, Plaintiff secured work as a telemarketer, a job he held from 2013 through 2016. (A.R. 53, 192.)

In 2016, Plaintiff fell down stairs and injured himself.  He had to be taken to the hospital in an ambulance.  (A.R. 56.)  He suffered several disc herniations in his neck and lower back, a torn meniscus of his left knee, and a torn tendon of his left ankle, all leaving him with lasting, daily pain, numbness in certain extremities, and requiring use of a cane to walk. (A.R. 54, 56, 60, 87, 191.)  Additionally, Plaintiff alleges mental impairments of post-traumatic stress disorder, depression, and anxiety as well as migraine headaches, ringing in his left ear, dizziness, nausea, blurred vision, and difficulty sleeping. (A.R. 54, 60, 210, 214.)  He has been prescribed various medications for his conditions including Oxycodone, Gabapentin, Rizatriptan, Escitalopram, and Aprazolam. (A.R. 63.) He also testified to being socially isolated and having difficulty concentrating, "barely sleep[ing] at night," and having frequent crying episodes.  (A.R. 64, 67, 69.) Additionally, he testified that he is constantly afraid, his anxiety and fear are "crippling," and he doesn't do any household chores or run errands for anything. (A.R. 54, 58, 60, 71.)  For purposes of his benefits claim, he asserts that his disability began March 18, 2016.

The Social Security Administration denied Plaintiff's application on January 9, 2018, after which Plaintiff requested a review by an administrative law judge.  A video hearing was held on August 2, 2019 before ALJ Judge Deanna L. Sokolski.  On September 5, 2019, the ALJ issued a written decision finding that Plaintiff was not disabled.  The ALJ's decision became final when the Appeals Council denied Plaintiff's request for review.  (A.R. 1-7.)

**2. LEGAL STANDARD**

A court's review of a Social Security disability determination requires two distinct inquiries. *See Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987); *Dwyer v. Astrue*, 800 F. Supp. 2d 542, 546 (S.D.N.Y. 2011). First, the court must determine whether the Commissioner applied the correct legal principles in reaching a decision. *See Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019). Second, the court must decide whether the Commissioner's decision is supported by substantial evidence in the record. *Id.* If the Commissioner's decision is supported by substantial evidence, the ALJ's findings as to any facts are conclusive. 42 U.S.C. §§ 405(g), 1383(c)(3).

An ALJ has an affirmative duty to develop the record on behalf of claimants, including those represented by counsel. *See Moran v. Astrue*, 569 F.3d 108, 112-13 (2d Cir. 2009); *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996). This duty exists because social security proceedings are "essentially non-adversarial." *Shafer v. Colvin*, No. 16-cv-7941 (LAP) (SDA), 2018 WL 4233812, at *7 (S.D.N.Y. Feb. 15, 2018), *report and recommendation adopted*, No. 16-cv-7941 (LAP) (SDA), 2018 WL 4232914 (S.D.N.Y. Sept. 4, 2018). Remand is appropriate when an ALJ has failed to appropriately develop the record. *See, e.g.*, *Donnelly v. Colvin,* No. 13-cv-7244 (AJN) (RLE), 2015 WL 1499227, at *8 (S.D.N.Y. Mar. 31, 2015).

Because this case was filed after March 27, 2017, the new regulations in 20 CFR §§404.1520c and 416.920c apply. Under these new regulations, the Commissioner "will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion." *Revisions to Rules Regarding the Evaluation of Medical Evidence* ("*Revisions to Rules*"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867–68 (Jan. 18, 2017), *see* 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the Commissioner must consider all

medical opinions and "evaluate their persuasiveness" based on the following five factors: supportability; consistency; relationship with the claimant; specialization; and "other factors." 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c). Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." *Id.* at §§ 404.1520c(a) and (b)(1), 416.920c(a) and (b)(1).

In the context of a Social Security benefits appeal such as this, the Court may not grant the unopposed motion based merely upon the opposing party's failure to respond. Instead, the Court "must review the record and determine whether the moving party has established that the undisputed facts entitle it to judgment as a matter of law." *Mitchell v. Berryhill*, 15-cv-6595, 2017 WL 2465175, at *6 (S.D.N.Y. June 7, 2017); *Martell v. Astrue*, 9-cv-1701, 2010 WL 4159383, at *2 n.4 (S.D.N.Y. Oct. 20, 2010); see also *Revi v. Commissioner of Social Security*, 2018 WL 1135400 (S.D.N.Y. Feb. 28, 2018) (adopting Report & Recommendation to deny the Commissioner's unopposed motion for judgment on the pleadings and remand because the ALJ failed to develop the record).

### 3. The ALJ's Decision

The ALJ in this case followed the five-step sequential evaluation process for determining whether an individual is disabled (20 CFR § 416.920(a)). At step one, the ALJ found that the claimant was not engaged in substantial gainful activity since September 25, 2017, the application date (20 CFR § 416.971 *et seq.*). (A.R. 13.) At step two, the ALJ determined that the claimant has the following severe impairments: degenerative disc disease of the lumbar and cervical spine,

left knee degenerative joint disease, and cervicalgia/ cervical radiculopathy (20 CFR § 416.920(c)). The ALJ found that Plaintiff has the following non-severe impairments: history of migraines, dizziness, tinnitus with episodes of blurry vision. (A.R. 13.) The ALJ also found Plaintiff's PTSD, anxiety and depression to be nonsevere, stating that they do not cause more than minimal limitation on Plaintiff's ability to perform mental work activities.[1] (A.R. 13.)

In assessing the severity of Plaintiff's mental diagnoses of PTSD, anxiety and depression, the ALJ stated when considering the four broad categories of mental functioning (i.e., understanding, remembering or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself) there was no evidence that Plaintiff had any more than "minimal limitation on the claimant's ability to perform basic mental work activities and are therefore non-severe." (A.R. 13.) (20 C.F.R. § 416.920).  In reaching this determination, the Commissioner cited reports from three treating sources: Dr. Vikas Varma MD, treating neurologist; Jeffrey Altamirano, a physical therapist; and Victor Brown, a licensed clinical social worker, to find that Plaintiff had no limitations in the first, second, and fourth functional areas.  First, the ALJ found that Plaintiff could understand, remember and apply information because treating neurologist, Dr. Vikas Varma found that on May 17, 2018 Plaintiff's "immediate recent, and remote memory seemed normal." (A.R. 557, Ex. 20F.)  Second, the ALJ found that Plaintiff could interact with others, because Altamirano wrote that during a physical examination of Plaintiff on October 12, 2018 Plaintiff was "alert, coherent, and cooperative.' (A.R. 512, Ex. 18F.)  Third, the ALJ found that Plaintiff could adapt and manage himself based on the same

---

[1] The ALJ also found that there were several alleged but non medically determinable impairments including angiopathy, reversible cerebrovascular constriction syndrome, and seizure episode. (A.R. 14.)

report cited above by Dr. Varma on May 17, 2018 (A.R. 557, Ex. 20F.) The ALJ also cited to an "Initial Psychosocial Evaluation" form that was completed by Mr. Brown at Phoenix Psychological Services on January 8, 2019, to find that Plaintiff could adapt and manage himself because the report found that he was "alert, oriented, . . . thought form logical and goal directed." (A.R. 486, Ex. 17F.)

As to the third functional area – concentrating, persisting, or maintaining pace – the ALJ found that Plaintiff had a mild limitation because he exhibited difficulty concentrating, but that his fund of knowledge was 'within the normal limits of age and educational background." (A.R. 14.) To support this limitation, the ALJ referenced the same reports referenced above from Dr. Varma and Mr. Brown at Phoenix Psychological Services. (A.R. 486, Ex. 17F.)

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meet or medically equals the severity of one of the conditions in the applicable listings (20 C.F.R. §§ 416.920(d), 416.925 and 416.926). (A.R. 14-15.) The ALJ then found that Plaintiff had the residual functional capacity to perform sedentary work with some restrictions and is capable of performing his prior job as a "telephone solicitor" as well as several other sedentary jobs identified by the vocational expert at the hearing. (A.R. 19-20.) Ultimately at step five, the ALJ determined Plaintiff is not disabled.

## DISCUSSION

After reviewing the record and the ALJ's decision, it is clear that the ALJ failed to develop the record regarding Plaintiff's mental impairments. Courts must exercise an "extra measure of caution" when addressing the claim involving a litigant whose mental capacity is in question. *Chapman v. ChoiceCare Long Island Term Disability Plan*, 288 F.3d 506, 514 (2d Cir. 2002).

Plaintiff's neurologist, who treated him for pain, referred Plaintiff to Phoenix Psychological Services because of his sad mood. (A.R. 531.) He was initially diagnosed with Adjustment Disorder with Depression and Adjustment Disorder with Anxiety, but upon re-evaluation diagnosed with PTSD, Chronic. (A.R. 345.) The administrative record identifies two licensed clinical social workers, Victor Brown and Daphney Garrison, who treated Plaintiff's mental health impairments in 2018 and 2019. Phoenix's records also indicate he was seen by a Dr. James McKnight for mental health treatment. (A.R. 343-345.) The sparse records of his mental health treatment indicate ongoing therapy sessions, but there are no records from those sessions, although offers were made to provide additional information. Nor does the ALJ appear to have requested any functional assessment from Plaintiff's mental health providers.

When commenting on Plaintiff's mental conditions/impairments and finding them nonsevere, the ALJ only acknowledged one report by Mr. Brown, one of Plaintiff's therapists. And, lacking any information about Plaintiff's mental health over time, relied on comments about Plaintiff's perceived mental state plucked from Plaintiff's neurologist's treatment records and from a physical therapist's notes. This Court questions the ALJ's conclusions about Plaintiff's mental health given the absence of treatment records that clearly exist or a mental health functional assessment from his treating sources or from a consultative source and reliance on cherry-picked comments from doctors who were not evaluating or treating Plaintiff for his mental health conditions. The ALJ's failure to develop the record concerning Plaintiff's mental health treatment and functioning requires remand. See *Martin v. Comm'r of Soc. Sec.,* No. 18-CV-0720MWP, 2020 WL 611015, at *2 (W.D.N.Y. Feb. 10, 2020) (Judge concluded that ALJ had a heightened duty to recognize that potentially significant treatment notes were absent and to

7

make an effort to obtain those notes and by failing to do so the ALJ failed to develop the record by either obtaining a functional assessment "or at the very least ordering a consulting psychiatric examination.")

The Court acknowledges that a licensed clinical social worker is not viewed as a *medical* source, but an ALJ nevertheless should consider information from other sources such as "social workers, which 'may also help . . . to understand how [the claimant's] impairment affects [his] ability to work'" and social workers reports can constitute acceptable information to supplement information from medical sources. *Krach v. Colvin,* No. 13-CV-1089 (GTS/CFH), 2014 WL 5290368, at *14 (N.D.N.Y. Oct. 15, 2014) (quoting 20 C.F.R. § 404.1513(e)) (alterations in original); *see also Grega v. Saul*, 816 Fed. App'x 580, 583 (2d Cir. June 8, 2020) (summary order) (holding that a licensed clinical social worker is not an acceptable medical source under the regulations); *McQuillan v. Saul*, No. 3:19-CV-00191 (SRU), 2020 WL 1545778, at *11 (D. Conn. Apr. 1, 2020) ("[L]icensed clinical social workers, and therapists, among others, are considered 'other sources.' . . . those opinions do not demand the same deference as those of a treating physician." (quotation marks and citations omitted)). An ALJ may not simply disregard such a provider's opinions simply because they are nonmedical sources. *Kelly v. Astrue,* No. 09-CV-1359, 2011 WL 817507 at *5–6, (N.D.N.Y. Jan. 18, 2011) (*reported and recommendation adopted,* 2011 WL 807398 (N.D.N.Y. Mar. 2, 2011)) (ALJ was not free to simply disregard a licensed clinical social worker's assessment on the basis that he was not an acceptable medical source alone).

The Commissioner argues that even though the Plaintiff submitted appointment records with Mr. Brown for a number of visits, but only submitted notes from two of those visits, and failed to submit any notes from any other psychiatric visits, the record is complete. (ECF No. 20

at p. 17.)   In support, the Commissioner notes that the SSA recognizes the sensitivity of and additional legal protections for psychotherapy notes, as defined by the Health Insurance Portability and Accountability Act ("HIPAA").  The Commissioner argues that psychotherapy notes are not required to be submitted, citing to a fact sheet for mental health professionals put forth by the SSA. *See* https://www.ssa.gov/disability/professionals/mentalhealthproffacts.htm (last visited November 5, 2021).  That same fact sheet, however, emphasizes the importance of providing mental health treatment records, stating "information from treating sources is *essential* to accurately assess the onset and severity of claimants' impairments . . ." *Id*. Furthermore, according to the same fact sheet, psychotherapy notes "excludes medication prescription and monitoring, counseling session start and stop times, the modalities and frequencies of treatment furnished, results of clinical tests, and any summary of diagnosis, functional status, the treatment plan, symptoms, prognosis, and progress to date." *Id*. Nonetheless, it appears the information from Phoenix is incomplete, as there is no evidence of results of clinical tests, explanations for diagnosis, or information about prognosis and progress. And, to the extent the Commissioner argues that there is no indication that Plaintiff was seen at Phoenix for medications or medication monitoring or that he was ever seen by a psychologist or psychiatrist, the record indicates that there was a supervising doctor – a Dr. McKnight. Treatment records from Dr. McKnight are absent, and it appears no functional assessment was requested from Dr. McKnight.   Given the above, the Court is hard pressed to find that any analysis of Plaintiff's mental impairments was sufficient.  *See May v. Comm'r of Soc. Sec.,* No. 1:09-CV-571 MAD/VEB, 2011 WL 2473008 (N.D.N.Y. June 21, 2011) (Court remanded for failure to properly develop the record by not obtaining a psychological or psychiatric evaluation.); *Plisko*

*v. Comm'r of Soc. Sec.,* No. 1:18-CV-00827-JJM, 2020 WL 428059 (W.D.N.Y. Jan. 28, 2020) (The Court found there was no professional medical or psychiatric opinion in the record linking the medical evidence (i.e. plaintiff's mental status examinations) to her functional abilities and at the very least should have ordered a consulting psychiatric examination); *Blabac v. Comm'r of Soc. Sec.,* No. 3:08–cv–849, 2009 WL 5167650 (N.D.N.Y. Dec. 18, 2009) (remanding to the ALJ because "the ALJ erred in failing to obtain a current psychiatric consultative examination to evaluate his mental functioning"); *Molt v. Comm'r of Soc. Sec.*, No. 1:05CV0418 (NPM/VEB), 2009 WL 5214920 (N.D.N.Y. Dec. 28, 2009) (noting that if the plaintiff's treating psychiatrist is unable to provide an assessment, the ALJ was obligated to send the plaintiff to a psychiatric consultative exam); *Martin v. Comm'r of Soc. Sec.,* No. 18-CV-0720MWP, 2020 WL 611015 (W.D.N.Y. Feb. 10, 2020) (Judge concluded that ALJ should make an effort to obtain notes and by failing to do so the ALJ failed to develop the record by either obtaining a functional assessment "or at the very least ordering a consulting psychiatric examination.")

The Court notes that sparse notes from the one mental health provider referenced by the ALJ, Mr. Brown, suggest potentially greater impairment than described by the ALJ. For example, one report from Mr. Brown indicates that Plaintiff has prolonged periods of depression, characterized by isolating and/or withdrawing from others, has difficulty sleeping, has no interest in pleasurable activities and had a series of traumatic events that have left him irritable and anxious. (A.R. 63, 66; 486, Ex. 17F.)  No explanation is given for why the ALJ relies on selected comments from Plaintiff's spinal neurologist and physical therapist rather than Plaintiff's mental health providers in determining the severity of Plaintiff's mental health conditions and mental functioning.

During the hearing, the questions asked to Plaintiff about his depression and anxiety span only one page of the 40-page transcript. (A.R. 64.)  The extent of the questions asked include: "[w]hat is it about your depression and anxiety that would prevent you from working a full-time job?"; "Do you talk to someone or do you just only go pick up your medicine? Do you have like talk therapy"; and "How often do you go?" (*Id*.)  The ALJ asked essentially no specific questions about the mental conditions that Plaintiff alleged, the duration or frequency of his symptoms, the intensity of Plaintiff's mental impairments, about whether they had gotten worse over time, or the effectiveness of any medications in keeping any of his symptoms under control.  The duty to develop the record goes beyond getting medical records, it also includes "the duty to question the claimant adequately about any subjective complaints and the impact of the claimant's impairments on the claimant's functional capacity." *Pena v. Astrue*, No. 07 CIV. 11099 (GWG), 2008 WL 5111317, at *8 (S.D.N.Y. Dec. 3, 2008)  The ALJ's omission of questions specifically directed towards Plaintiff's alleged mental impairments failed to satisfy this requirement. *See Maldonado v. Comm'r of Soc. Sec.,* 524 F. Supp. 3d 183, 195 (S.D.N.Y. 2021)

## **CONCLUSION**

For the above reasons, the Court finds that the ALJ failed to appropriately develop the record with regard to Plaintiff's mental impairments.  Accordingly, the Commissioner's motion at ECF No. 20 is denied and this case is remanded to the ALJ for further proceedings.  The Clerk of Court is directed to close the case.

Dated: November 5, 2021
New York, New York

KATHARINE H. PARKER
United States Magistrate Judge